# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KELLY WINSTON, Individually and as next friend of KAYLA WINSTON and KYLA WINSTON, <br><br> Plaintiffs, <br><br> v. <br><br> The CITY OF CHICAGO, GLENN JONES, Chicago Police Officers A. MYERS (Star #3377), M. BURCHETT (Star #11138), and ESTATE OF DALILA SMITH <br><br> Defendants. | No. 14 C 04608 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kelly Winston, Kayla Winston, and Kyla Winston bring this ten-count Amended Complaint alleging violations of their Fourth and Fourteenth Amendment rights, negligence, willful and wanton conduct, breach of duty to train and supervise and *respondeat superior* liability by the City of Chicago, indemnity, and negligent entrustment. Defendants City of Chicago ("the City") and Officers A. Myers and M. Burchett ("defendant Officers") brought a joint partial motion to dismiss Counts I-III, V, and VII. For the following reasons, the motion is granted.

## BACKGROUND

On April 10, 2014, Glenn Jones was driving a Volkswagen Jetta southbound on State Street, near 121st Street, in Chicago, Illinois. Am. Compl. ¶¶ 14, 21, Dkt. 26. The two blocks of State Street between 121st and 123rd Streets are a residential area, with a posted speed limit between 20 and 30 miles per hour and one lane of traffic traveling in each direction. *Id*. ¶ 24. The Volkswagen Jetta belonged to Dalila Smith, who was riding in the front passenger seat that

night. *Id.* ¶ 14. Around 7:00 p.m., Chicago Police Officers Myers and Burchett attempted to conduct a traffic stop and pull over the Jetta because it was missing a front license plate.[1] *Id.* ¶ 13. Jones fled, speeding southbound on State Street at over 70 miles per hour. *Id.* ¶ 21. The officers pursued Jones for at least two blocks, traveling over 50 miles per hour. *Id.* ¶¶ 22-23. Jones failed to stop at the stop sign at 12126 S. State Street and disregarded two separate traffic control devices between 121st and 123rd Streets. *Id.* ¶¶ 29-30. The officers pursued Jones through the intersection of 123rd Street and State Street, where Jones drove through a red traffic light. *Id.* ¶¶ 28, 31.

As Jones sped toward the intersection at 70 miles per hour, plaintiffs Kelly, Kayla, and Kyla Winston were stopped at the red light facing eastbound on 123rd Street at the intersection with State Street. *Id.* ¶ 11. Kelly Winston was driving a Chrysler 200, with Kayla in the front passenger seat and Kyla in the back seat. *Id.* ¶ 12. When the light turned green, the Winstons drove slowly into the intersection, and Jones hit their vehicle as he ran the red light. *Id.* ¶¶ 27, 31. As a result of the collision, Kelly Winston suffered broken ribs, a broken shoulder blade, a broken left arm, broken hips, a broken leg, a broken ankle, a broken foot, and severe emotional distress. *Id.* ¶ 37. Kyla and Kayla Winston suffered injuries to their arms and severe emotional distress. *Id.* ¶¶ 38-39. Defendants Jones and Smith died as a result of injuries they sustained in the collision. *Id.* ¶ 40.

All parties are (or were, in the case of the deceased defendants) residents of the Northern District of Illinois. *Id.* ¶¶ 4-8. The Officers are present or former employees of the City of Chicago Police Department. *Id.* ¶ 9. This incident occurred while the Officers were on duty. *Id.*

---

[1] The Illinois Vehicle Code requires automobiles registered in the state to display state-issued license plates on both the front and rear of the automobile. 625 ILCS 5/3-413(a).

The City of Chicago is a municipal corporation incorporated under the laws of the state of Illinois. *Id*. ¶ 10.

The Winstons brought suit against the City and Officers as well as Jones and Smith.[2] The pending motion seeks to dismiss the majority of the claims against the City of Chicago and Officers Myers and Burchett, including: Count I, alleging that the Officers violated the Winstons' Fourth Amendment rights due to an unlawful seizure; Count II, alleging that the Officers violated the Winstons' Fourteenth Amendment due process rights to be free from a state-created danger; Count III, alleging that the Officers violated the Winstons' Fourteenth Amendment due process rights by acting with deliberate indifference to a substantial risk of harm; Count V, alleging negligence by the City and the Officers; and Count VII, alleging that the City breached its duty to train and supervise the Officers. *See* Mot. Dismiss at 1, Dkt. 22.[3] The claims directed to defendants Jones and Smith are not at issue in this motion.[4]

## DISCUSSION

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Adams*, 742 F.3d at 728

---

[2] The Winstons filed an Amended Complaint to add defendant Smith and to add additional allegations about Jones after the City and Officers moved to partially dismiss the Complaint. *See* Resp. at 3.

[3] The City and Officers did not move to dismiss two of the state law counts against them: Count VI, which alleges willful and wonton conduct, and Count IX, the indemnity claim. *See* Am. Compl. ¶¶ 12-13, 16.

[4] Count IV alleges negligence by Jones, and Count X alleges negligent entrustment by Smith. Am. Compl. ¶¶ 8-10, 17-18.

(*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although a court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, conclusory allegations merely restating the elements of a cause of action do not receive this presumption: "A complaint must allege *facts* to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams*, 742 F.3d at 728 (emphasis added).

To state a claim under § 1983, as the Winstons' first three counts attempt to do, a plaintiff must sufficiently allege that a person acting under color of state law violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). The Winstons' Amended Complaint states that the Officers attempted to pull Jones over for a traffic stop—an act an officer undertakes under color of state law—and asserts that the Officers "engaged in the conduct complained of while on duty and in the course and scope of their employment and under the color of law."[5] Am. Compl. ¶¶ 9, 13. The question presented here is whether, while attempting to apprehend Jones, the Officers violated any of the Winstons' constitutional rights. Although there may be other legal theories available to the Winstons, it is clear that in pursuing Jones, the Officers did not violate the Winstons' constitutional rights.

---

[5] In responding to the motion to dismiss, the Winstons argue that discovery is necessary to determine whether "Myers and Burchett are contending they were engaged in the scope of employment and actively enforcing a law." Resp. at 11. That is an odd argument to make in opposition to a motion to dismiss when the Amended Complaint asserts that the Officers were acting within the scope of their employment and under color of law; in asserting that discovery is required on these issues, the plaintiffs appear to be hedging their bet by trying to avoid application of the Illinois Tort Immunity Act with respect to their state law claims. *See* 745 ILCS 10/2-202 (shielding police officers from liability unless they committed willful and wanton conduct); Resp. at 11. In any event, for purposes of this motion, it is not disputed that the Officers were acting under color of law.

## I. Count I: Unlawful Seizure in Violation of the Fourth Amendment

The Winstons allege that the Officers "seized" them in violation of their Fourth Amendment rights when the Officers "intentionally created an obstacle in the roadway (the car driven by Jones) which unquestionably terminated Plaintiffs' freedom of movement." Resp. at 5. This theory is squarely foreclosed by the Supreme Court's opinion in *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). In *Lewis,* the Supreme Court explained that a "seizure" in the context of the Fourth Amendment:

> "[D]oes not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" We illustrated the point by saying that no Fourth Amendment seizure would take place where a "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him."

*Id*. at 844 (*quoting Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)) (emphasis in original). *See also California v. Hodari,* 499 U.S. 621, 626 (1991) (police pursuit of a fleeing suspect does not constitute a "seizure" under the Fourth Amendment).

Consistent with these precedents, the Seventh Circuit requires a plaintiff to prove two elements in a § 1983 case derived from a police chase: (1) that the officer forcibly stopped the vehicle; and (2) that the contact was intentional. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). The Seventh Circuit has noted the distinction between "an accidental or tortious act which happens to be committed by a governmental official and an intentional detention that rises to the level of a constitutional violation." *Bublitz v. Cottey*, 327 F.3d 485, 489 (7th Cir. 2003) (*quoting Campbell v. White,* 916 F.2d 421, 422-23 (7th Cir. 1990)). An officer's accidental act, such as

accidentally running over a fleeing suspect or pursuing a suspect who then crashes into a bystander, does not constitute a seizure because "the officer's action was not the 'the means intentionally applied to effect the stop, but was rather an unfortunate and regrettable accident.'" *Bublitz*, 327 F.3d at 489 (*quoting Campbell*, 916 F.2d at 423)).

The Winstons do not allege that the Officers intended to stop their vehicle.[6] Instead, they propose a theory of transferred intent: "Myers and Burchett intended to stop Jones's freedom of movement by chasing him; by their intentional conduct of chasing Jones, they caused Jones to hit Plaintiffs and thus terminate Plaintiff's (sic) movement." Resp. at 5.[7] The Seventh Circuit rejected such a transferred intent argument in *Bublitz*; there, an officer deployed a tire-deflation device to stop a fleeing armed robber, causing the robber's car to veer into a minivan and kill

---

[6] The Winstons note that, through discovery, they "may learn that Defendants Myers and Burchett struck Jones's vehicle into Winston's vehicle, or that Defendants Myers and Burchett themselves struck Plaintiffs' vehicle, or that Myers and Burchett saw Plaintiffs' vehicle and intended to seize it." Resp. at 6. This hypothetical posturing is not sufficient to meet the burden of facial plausibility required at the motion to dismiss stage; "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. *See also, e.g., Adams*, 742 F.3d at 728; *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*, 674 F.3d 630, 637 (7th Cir. 2012) ("D]iscovery is not to be used as a fishing expedition."). Taking all facts pled as true and drawing all reasonable inferences in favor of plaintiffs, there is nothing in the Amended Complaint to permit a plausible inference—or even a remote possibility—that the Officers "saw Plaintiffs' vehicle and intended to seize it." And even if the Officers struck Jones's vehicle into the Winstons' vehicle, or struck the Winstons' vehicle directly, those facts would not give rise to an inference that the Officers *intended* to affect the Winstons' vehicle in any way.

[7] The cases the Winstons cite to support their claim that the Officers "seized everything in Jones's path" are inapposite. Resp. at 6. In each of the cited cases, the officers intended to seize the person or the vehicle at issue. *See, e.g.*, *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th Cir. 1998) (where canine officer intended dog to seize plaintiff because he thought she might be a burglar); *Rodriguez v. Passinault*, 637 F.3d 675, 683 (6th Cir. 2011) (passenger is seized when officers intend to stop a vehicle by shooting at the driver); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 876 (6th Cir. 2000) (passenger shooting victim, "a voluntary cohort of [the driver]," was an intended target of a seizure); *Fisher v. City of Memphis*, 234 F.3d 312, 318-19 (6th Cir. 2000) (when officer shot at the car, he intended to stop and seize everyone inside). Here, there are no facts pled to support an inference that the Officers had any intent with regard to the Winstons or their vehicle.

6

two of the passengers. 327 F.3d at 486. The family of the victims argued that the tire-deflation system was the "means intentionally applied" by the officer and that, because it had the further consequence of stopping the minivan, the officer intended to seize the minivan as well. *Id*. at 489. The court held that the collision "was not a means intended by police to stop the family, but rather an unintended consequence of an attempt to seize [the fleeing driver]. This would seem to preclude any finding that the [ ] family was 'seized' by the police as a result of the crash." *Id*. So, too, here: the only plausible inference permitted by the facts alleged is that the Officers intended to stop Jones, not the Winstons. "The subsequent collision was [ ] the accidental and wholly unintended consequence of an act that happened to be committed by a government official." *Id*.

Because the Officers did not intend to seize the Winstons, there is no Fourth Amendment violation that can provide the basis for a § 1983 claim. The motion to dismiss this count is therefore granted with prejudice.

**II.     Counts II and III: State-Created Danger and Deliberate Indifference in Violation of the Fourteenth Amendment**

The Winstons allege a violation of their Fourteenth Amendment due process rights under two alternative theories: a state-created danger and deliberate indifference to a substantial risk of harm. Am. Compl. ¶¶ 52, 59. The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Because the due process clause was not meant to serve as a 'font of tort law to be superimposed upon whatever systems may already be administered by the States,' only those governmental actions which involve substantial culpability are actionable under the Fourteenth Amendment." *Bublitz*, 327 F.3d at 490 (*quoting Paul v. Davis,* 424 U.S. 693, 701 (1976)). The Supreme Court has characterized the required level of culpability in the context of a police chase "as that which

7

shocks the conscious." *Lewis*, 523 U.S. at 846 (rejecting use of a "deliberate indifference" standard).

In interpreting the shocks the conscious standard, the Seventh Circuit has held that "the *sine qua non* . . . is a purpose to cause harm." *Steen*, 486 F.3d at 1023 (*quoting Bublitz*, 327 F.3d at 491). Conscious-shocking behavior is likely to be found "where the 'conduct [is] intended to injure in some way unjustifiable by any government interest[;]' . . . a minor traffic stop, and pursuit of a fleeing suspect after an unexplained flight from that stop, is a legitimate government interest." *Steen*, 486 F.3d at 1023 (*quoting Lewis*, 523 U.S. at 849). In the context of police pursuits, the Supreme Court has held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Lewis*, 523 U.S. at 854;[8] *see also Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) ("We hold [ ] that motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under § 1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it.").

As noted *supra*, the Winstons have not pled facts that show or lead to an inference that the Officers intended to cause the Winstons harm. Although the Winstons point out a number of

---

[8] The Winstons reliance on *Checki v. Webb,* 785 F.2d 534, 538 (5th Cir. 1986) is misplaced. In *Lewis*, the Supreme Court cited *Checki* in a footnote distinguishing the negligent use of a police vehicle, which is not actionable under § 1983, and the intentional misuse of a police vehicle, which is. 523 U.S. at 854 n.13. But the facts in *Checki* supported a plausible inference that the police were "terrorizing" the plaintiff by using an unmarked vehicle to tailgate the plaintiff within two to three feet at speeds over 100 miles per hour for 20 miles without signaling in any way that they were police and without, so far as the opinion relates, any basis to suspect that they had committed any offense. There are no analogous facts here to support an inference that the defendant Officers were deliberately misusing their office, or their vehicle, to harm Jones in some fashion, much less that they were doing so with an intent to harm the Winstons. *Checki* is simply inapposite.

facts that may raise questions of negligence or recklessness—the chase occurred "at a high rate of speed through . . . a residential neighborhood at 7 p.m."—this does not rise to the level of conscious-shocking—that is to say, intentional, conduct. Am. Compl. ¶ 53; *see Lewis,* 523 U.S. at 853. Moreover, the Officers had a legitimate government interest in pursuing a fleeing suspect after an unexpected flight from a traffic stop. That the failure to mount a front license plate is a relatively minor transgression, moreover, does not mean that police must overlook such transgressions whenever a suspect flees rather than stops his vehicle in response to flashing lights in the rearview mirror. As the Supreme Court also explained in *Lewis,* police officers

> are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance." . . . A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

523 U.S. at 853 (*quoting Whitley v. Albers,* 475 U.S. 312, 320 (1986)).

The Winstons claim that the officers "had time to deliberate . . . over the span of two blocks," Resp. at 7-8, but a high-speed chase, at speeds between 50 and 70 miles per hour, over a short distance, does not provide an adequate opportunity for a careful weighing of the risks of pursuing a fleeing suspect. The *Lewis* Court noted as much, stating that the deliberate indifference standard should only be used when actual deliberation is possible, which makes it inappropriate for high-speed police-chase situations. *Id.* at 853-54; *Bublitz,* 327 F.3d at 490-91 (deployment of tire deflation system where officer had three to five minutes to consider its use held to have been negligent at most). Occasionally, police officers make the wrong judgment in these situations; on the facts of record, they did so here. But mistakes of judgment, even those

9

that result in tragedy, do not give rise to liability under § 1983.[9] Because the Winstons have failed to plead facts that give rise to a plausible claim that the Officers intended to cause them harm, the Officers cannot be liable under the Fourteenth Amendment. Counts II and III are therefore dismissed with prejudice.

## III. Counts IV-X: State Law Claims

This Court had federal jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.[10] Of the ten counts, only Counts I-III invoke plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments. The remaining seven claims are governed by state law: Count VI, alleging negligence by Jones; Count V, alleging negligence by the City and the Officers; Count VI, alleging willful and wanton conduct by the City and the Officers; Count VII, alleging that the City breached its duty to train and supervise the Officers; Count VIII, alleging *respondeat superior* liability by the City; Count IX, alleging indemnity under 745 ILCS 10/9-102; and Count X, alleging negligent entrustment by Smith. *See* Am. Compl. "In general, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015) (internal quotation omitted); *see also, e.g., Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) ("[S]ubsection (c)(3)

---

[9] The cases the Winstons cite in support of their substantive due process argument are inapt because they all note that officers may be liable under the Fourteenth Amendment for creating a "gratuitous risk" of harm or a risk "without justification." *See, e.g.*, *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012) (officers released victim in dangerous neighborhood at night); *Reed v. Gardner,* 986 F.2d 1122, 1125 (7th Cir. 1993) (officers arrested driver and left car keys with intoxicated passenger); *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989) (officers arrested a driver and left the passenger stranded in a high-crime area). Here, the Officers had a legitimate government interest in pursuing a fleeing suspect after an unexpected flight from a traffic stop. *Steen*, 486 F.3d at 1023. While the chase may have created a risk, the legitimate government interest provided the justification.

[10] The plaintiffs do not claim that there is diversity jurisdiction, and it appears that all parties are Illinois citizens. *See* Am. Compl. ¶¶ 4-10.

expressly authorizes the district judge to dismiss a supplemental claim when the federal claims have dropped out of the case."). Here, where the federal claims cannot survive even a motion to dismiss, there are no countervailing factors that weigh in favor of retaining jurisdiction over the supplemental state law claims the plaintiffs have asserted. Accordingly, the remaining state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

*   *   *

Counts I-III of the plaintiffs' Amended Complaint are dismissed with prejudice for failure to state a claim upon which relief can be granted. Because this Court is dismissing the claims that provided the Court with federal question jurisdiction under 28 U.S.C. § 1331, the remaining seven state law claims (Counts IV-X) are dismissed without prejudice.

Dated: September 15, 2015

John J. Tharp, Jr.
United States District Judge